UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case No.**

ALVIN CANDIDATE,

   *Plaintiff*,

v.

CITY OF MIAMI;
OFFICER SHANE TARDIEU; and
OFFICER RYAN MICHEL,

   *Defendants*.

_____/

**COMPLAINT**

The Plaintiff, Alvin Candidate ("Candidate") sues the Defendants, the City of Miami ("Miami" or the "City") and City of Miami Police Department Officers Shane Tardieu and Ryan Michel, and in support thereof alleges the following:

**Nature of the Case**

1. This lawsuit presents claims for damages for bodily injury inflicted on Mr. Candidate by Officers Tardieu and Michel on April 18, 2017.

2. This action alleges violations of civil rights, and of state and federal laws, which resulted in serious bodily injury to Mr. Candidate when he was hit with a baton on the right side of his face knocking out teeth and knocking Mr. Candidate to ground, where, while on the ground, Mr. Candidate was repeatedly kicked and punched by Officers Tardieu and Michel.

3. This suit asserts that the Defendants acted illegally and improperly, in that the acts and omissions of the City and its police officers, detectives, and police supervisors,

      created an atmosphere of hostility and harassment against citizens, including Mr. Candidate.

4. Further, this lawsuit alleges that on April 18, 2017, Defendants Tardieu and Michel, while on the job as City of Miami police officers, unjustifiably and without provocation hit, kicked, and punched Mr. Candidate, all of which was unlawful, unwarranted, and improper.

5. As more particularity alleged herein, the City, its elected officials, police department, and police officers are legally liable for Mr. Candidate's injuries because of their pattern or practice of failing to properly hire, train, supervise, discipline, and/or retrain their police force in a manner consistent with the protections afforded by the Constitution of the United States of America, federal statutes, and Florida law.

6. This lawsuit asserts that the City and the police officers named herein were deliberately indifferent to the rights of the public, including Candidate, in failing to have proper protocols for police encounters and the use of force during police encounters and in ignoring the rights of its citizens, including Candidate. In so doing, Defendants failed to establish or execute a reasonable review policy for the consideration and redress of citizen's complaints against police officers.  Such failure resulted in police officers operating on a day-to-day basis without any real concern for internal supervisory review so that "street justice" became commonplace. This failure resulted in an atmosphere of invulnerability for the members of the police force. The City's dereliction of its governmental function

       resulted in the unlawful beating and constitutional violations against Mr. Candidate in Miami-Dade County, Florida.

7. This suit further alleges that Officers Tardieu and Michel had no probable cause or reasonable suspicion for pursuing Mr. Candidate, knocking him to the ground, and beating him.

8. Candidate seek damages against Defendants for violation of his rights under the Fourth Amendment to the Constitution of the United States of America pursuant to 42 U.S.C. §1983, as well as other federal laws. Additionally, Plaintiff asserts state-law claims and demands trial by jury.

## Jurisdiction and Venue

9. This action for damages is brought to redress violations of federally-protected constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the Constitution of the United States of America, along with supplemental state-law claims.

10. This Court enjoys jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(1), (3), and (4), 2201 and 2202; whereas 28 U.S.C. § 1367(a) grants the Court supplemental jurisdiction over the state-law claims.

11. Furthermore, the state-law claims herein are filed pursuant to Fla. Stat. § 768.28 (Florida's "Waiver of Sovereign Immunity in Tort Actions").

12. Venue properly lies in the Southern District of Florida because all events giving rise to this action occurred in Miami-Dade County, Florida.

13. Notice of this claim was provided to the Defendants in accordance with Fla. Stat. §768.28 and Plaintiffs satisfied all conditions precedent to bring this lawsuit. (Statutory pre-suit notice letter attached hereto as **Exhibit A.**)

## The Parties

14. The Plaintiff, Candidate, is and was at all times material hereto an adult resident and citizen of the State of Florida, within this District.

15. Defendant City is responsible through its officers, employees, servants, and agents for enforcing the ordinances, rules, and regulations of the City of Miami, and for ensuring that its officers, employees, servants, and agents obey the laws of the United States of America and the State of Florida.

16. Defendant City at all times material hereto operated the Miami Police Department (the "Department").

17. Officer Tardieu was, at all times material hereto, a duly appointed police officer of the Department, acting within the course and scope of his employment and acting under color of law, employed by the City.

18. Officer Michel was, at all times material hereto, a duly appointed police officer of the Department, acting within the course and scope of his employment and acting under color of law, employed by the City.

## General Allegations

19. On April 18, 2017, Candidate was sitting in front of the Williams Brothers Corner Store located at 1298 NW 62 Street in Miami, Florida.  At that time and place Candidate was not committing any crime and Defendants Michel and Tardieu had no reason to suspect that Candidate had committed, was in the process of

committing, or even was contemplating the commission of any crime. Thus, Defendants Michel and Tardieu had no probable cause or reasonable suspicion to stop, question, or arrest Candidate. Notwithstanding the lack of probable cause or reasonable suspicion, Defendants Michel and Tardieu shouted at Candidate, who, frightened by the unprovoked yelling and screaming from the Defendants, began to run away from the area. Defendants Tardieu and Michel began to chase Candidate and, upon catching up with him, struck him in the head with a baton, knocking him to the ground, causing him to lose consciousness, knocking out teeth, and otherwise causing serious bodily injury. While Candidate was on the ground, Tardieu and Michel repeatedly kicked and punched Candidate. Again, at that time and place, Candidate had not committed any crime, was not in the process of committing any crime, was not about to commit any crime, and the Defendants had no reason to believe that Candidate had done so.

20. Prior to the incident complained of herein, Defendant Tardieu had been a Miami Police Officer only since 2014 and had received at least 9 citizen complaints as documented by the City of Miami Civilian Investigative Panel ("CIP"), including at least 5 prior excessive use-of-force complaints.

21. Additionally, as reported several times in local media, despite the availability of body cams and "regulations" of the City that police officers use body cams when interacting in a law enforcement event, it was well publicized that City police officers, including Defendant Tardieu, frequently and repeatedly failed to use their body cams when interacting with civilians in such law enforcement events. Since at least 2016, the CIP had warned that Miami Police Officers were not following

regulations regarding the use of body cams.  The CIP, in fact, sent a letter to Chief Jorge Colina warning that body-cam policies were not being enforced and found that in the ten cases reviewed by the panel in the preceding 12 months, police failed to use their body cams in 5 cases and only partially recorded the interaction in three other cases.  The CIP specifically rebuked Defendant Tardieu, who in two cases was accused of aggressive conduct but failed to record either incident.  The CIP warned that lack of compliance made the investigators worry that police officers were "up to no good."

22. Notwithstanding the foregoing, neither the City nor the Department took any action to reprimand or discipline Tardieu, or any other officer, for non-use of their federally funded body-cams.

23. The use of body-cams by police officers is intended to, among other things, provide objective evidence of the conduct of police officers in their interactions with civilians.  The Department putatively instructs its officers to use their body-cams whenever they interact with civilians, but in reality, as demonstrated by the findings of the CIP, the City and the Department did not enforce the policy, thereby creating a custom or practice among the officers in the Department that the use of their body-cams was not required and that they were therefore free to use excessive force without fear of discipline or reprisal because they knew their actions would not be recorded.

24. In the instant action, while the Defendant officers wore body-cams at the time they interacted with Candidate, they did not activate their body-cams when they first encountered, yelled at, chased, and beat Candidate, as alleged herein.  Only after

Candidate was in custody did Tardieu and Michel turn on their body-cams, recording only the post-arrest portion of their interaction. As a result of the City's and Department's failure to enforce their own regulations, the actual custom or practice allowed the Defendant officers to violate the civil rights of the Plaintiff with no fear that their actions would be recorded nor would they be held accountable for their actions.

**COUNT I – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST THE CITY**

25. Candidate re-alleges the allegations of paragraphs 1-24, *supra*, and incorporates them as if stated herein in full.

26. At all times material hereto, Defendant City, as represented by the acts of its employees, permitted, tolerated, and caused a pattern or practice of unjustified, unreasonable, and/or illegal uses of force against members of the public by police officers of the Defendant City. Although such acts were improper, the police officers involved were not prosecuted and/or disciplined and/or retrained. In fact, some of said incidents were covered up with official claims that the police officers' acts were justified and proper. As a result, the City police officers, including Officers Tardieu and Michel, were caused and encouraged to believe that members of the public could be subjected to illegal uses of force and that such illegal uses of force would be permitted by the City.

27. In the instant matter, Tardieu and Michel acted at all times material hereto under color of law and within the course and scope of their employment as officers of the Miami Police Department.

28. A reasonable officer standing in the shoes of Tardieu and Michel and confronted with the same circumstances would believe that <u>no force</u>—much less beating Plaintiff with a baton and kicking and punching him—was necessary in the situation.  Candidate had not been violent or threatened violence.  He posed no threat to the safety of Tardieu, Michel, himself, or others.  Indeed, Candidate, was not acting suspiciously or committing any crime at the time of the approach.  There was not ever reasonable suspicion to approach him. In Officers Tardieu and Michel's world, however, Candidate was guilty of being known to Tardieu and Michel as a potential criminal; nonetheless, at the time of this incident, Candidate was not committing any crime.

29. The City was responsible for following and implementing all relevant laws, rules, regulations, and policies with regard to screening, hiring, retaining, training, supervising, controlling, disciplining, and assigning to duties the officers of the Miami Police Department.

30. The City was deliberately, callously or recklessly indifferent to the rights of individuals, particularly Candidate, in that it instituted a custom or policy of negligently, recklessly, or willfully failing properly to screen, hire, retain, train, supervise, control, discipline, and assign to duties the officers of the Miami Police Department., and failing to enforce its own rules and regulations regarding the use of body-cams thereby allowing its officers to actually use excessive force without fear of any adverse consequences.

31. The Department and the City had a custom or practice of using excessive force when the circumstances did not call for the use of force or violence against

individuals such as Candidate when alternative means of handling the situation were available.

32. The Department and the City failed by custom or practice to have any effective policy or procedure to prevent the use of excessive force against individuals such as Candidate.

33. The City failed to determine whether members of the Department, particularly Tardieu and Michel, posed a threat to the public as a result of their propensity to commit unlawful acts and to engage in unprofessional activity and improper use of force.

34. The Department and the City acted with deliberate, callous, or reckless indifference to the constitutional rights of Mr. Candidate.

35. The City knew or should have known that its deliberate, callous, or reckless indifference foreseeably would result in injury to members of the public, including Candidate.

36. In light of the excessive number and frequency of complaints against these and other City officers, the need for the City to train or retrain officers on the use of force and to investigate and discipline officers involved in use of force was obvious.

37. Despite its knowledge of the dangerous propensities of the members of the Department, particularly Tardieu, the City failed and refused to remove such members of the Department from their positions as police officers, failed and refused to take meaningful disciplinary action against such members of the Department, and failed to provide redress for members of the public, such as Candidate, who have been injured thereby.

38. The City, through its deliberate, callous, or reckless indifference, failed to ensure that the members of the Department, particularly Tardieu and Michel, while acting within the course and scope of their employment and while acting under color of law, would not violate the constitutional and statutory rights of the public, including Candidate.

39. The Miami Police Department, though its officers, maintained a custom or policy of using excessive force as evidenced by its failure to impose progressive discipline for misconduct.

40. The City caused, permitted, and tolerated a pattern or practice of unjustified, unreasonable, unlawful, and excessive use of force against members of the public by officers of the Department and failed to prosecute, discipline, or train the officers involved, causing and encouraging the members of the Department to believe that individuals could be subjected to the use of excessive force and that the City would permit and protect such use of excessive force.

41. The City established and maintained a system of reviewing incidents and complaints of abuse of authority, such as, *inter alia*, the excessive use of force by members of the Department, that failed to identify the abuse of authority and use of excessive force as such and failed to subject the officers involved to appropriate supervision, discipline, and training, such that it has become the custom, policy, pattern, or practice of the City to encourage and tolerate such abuse of authority and use of excessive force.

42. The City through the Department, has maintained a longstanding, widespread history of failing to properly hire, train, supervise, and/or discipline its officers for,

*inter alia*, illegal uses of force, even though there has been repeated, widely publicized notice of the unlawful and improper conduct of its employees.

43. The above-referenced acts, omissions, policies, or customs of the City caused its police officers, including the Defendant Officers, to believe that such acts of improper uses of force would not be properly monitored by supervisory officers and would not be properly investigated or sanctioned, but instead would be tolerated. The foreseeable result being that officers, like Defendants Tardieu and Michel were more likely to use improper or excessive force.

44. The actions of the Department and the City violated Candidate's clearly established, well-settled, and constitutionally protected rights to be free from the use of excessive, unreasonable, and unjustified force against his person.

45. Candidate was a victim of such abuse of lawful authority and Defendants Tardieu and Michel's illegal acts were the direct result of the above-described acts, omissions, policies, or customs of the City.

46. As a direct and proximate result of the deprivation of his constitutionally protected rights, Candidate was seriously injured and incurred damages.

47. Candidate incurred and claims damages for bodily injury and other damages, including but not limited to the loss of his income, , as well as physical pain and suffering, lost capacity for the enjoyment of life, and emotional trauma and suffering.

## COUNT II – VIOLATION OF CIVIL RIGHTS UNDER § 1983

## AGAINST TARDIEU AND MICHEL

48. Plaintiff re-alleges the allegations of paragraphs 1-24, *supra*, and incorporates them as if stated herein in full.

49. Tardieu and Michel, when they chased and beat Candidate, subjected Candidate to the deprivation of clearly established rights, privileges, and immunities secured by the Constitution and laws of the United States, including the right to be free from unreasonable seizure, the right to not be deprived of life and liberty without due process of law, and the right to be free from the use of excessive force against his person.

50. Tardieu and Michel's conduct was committed with deliberate, callous, or reckless indifference to Candidate's constitutional rights.

51. Any reasonable officer standing in Tardieu and Michel's shoes would have known that Tardieu and Michel's conduct foreseeably would result in the deprivation of Candidate's constitutional rights.

52. Alternative means, other than the use of excessive force, were available to handle the situation.

53. In Tardieu and Michel's interaction with Candidate, there was at stake no governmental interest: Candidate had committed no crime; Candidate was not a threat to Tardieu or Michel, himself, or others; Candidate was not actively resisting Tardieu and Michel; Candidate was not fleeing from any crime scene.

54. As a direct and proximate result of the deprivation of his constitutionally protected rights, Candidate sustained bodily injury and incurred damages.

## **COUNT III – BATTERY AGAINST TARDIEU AND MICHEL AND THE CITY (STATE TORT)**

55. Candidate re-alleges the allegations of paragraphs 1-24, *supra*, and incorporates them as if stated herein in full.

56. Tardieu and Michel intentionally, unnecessarily, and without legal justification, violently struck Candidate, beat him with a baton, knocked him to the ground, and kicked and punched him while on the ground.

57. The force used by Tardieu and Michel was unreasonable and unnecessary for the officers to defend themselves, or any other person, from bodily harm during the improper arrest of Candidate. Candidate at no time attempted to resist arrest with violence.

58. Both Tardieu and Michel intentionally and offensively touched, i.e. physically struck and beat, Candidate, both Tardieu and Michel intended to cause harmful and offensive contact with Candidate; and did, in fact, cause harm or offensive contact to Candidate. At no time did Candidate consent to such harmful and/or offensive contact.

59. Tardieu and Michel acted at all times within the course and scope of their employment with the City as police officers. Alternatively, Tardieu and Michel's actions described above show bad faith, malicious purpose, and wanton and willful disregard of human rights and safety.

60. As a result of the conduct of Tardieu and Michel, Candidate sustained serious injuries as alleged herein.

61. As a further direct and proximate result of the conduct described above, Candidate suffered bodily injury and resulting pain and suffering, disability, disfigurement, anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, loss of earnings and the ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Candidate will suffer the losses in the future.

**WHEREFORE,** in light of the foregoing, the Plaintiff, Candidate prays that this Honorable Court enter judgment against the Defendants, The City of Miami, Shane Tardieu, and Ryan Michel and award damages for pain and suffering, disability, disfigurement, mental and physical anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings and the ability to earn money, and aggravation of a previously existing conditions, along with all other relief the Court deems proper and just. The losses are either permanent or continuing and Candidate will suffer the losses in the future.

## Jury Demand

62. Candidate demands a trial by jury of all issues so triable as of right.

Dated this 31st day of December, 2020.

>Respectfully submitted,
>
>***/s/ Domingo C. Rodiguez, Esq***
>Domingo C. Rodriguez, Esq.(F.B.N. 394645)
>*Co-counsel for Plaintiff*
>Rodriguez Law Office, LLC
>95 Merrick Way, Suite 720
>Coral Gables, FL 33134
>P: 305 774-1477
>F (305) 774-1075
>Domingo@RLOMiami.com

Curt Obront, Esq.
Co-counsel for Plaintiff
Obront Corey, PLLC
100 South Biscayne Blvd, Suite 800
Miami, Florida 33131
P: 305 373-1040
F: 305 373-2040
Curt@Obrontcorey.com